[Cite as *State v. Rausenberg*, 2017-Ohio-1078.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 16CAA020007 |
| MATTHEW D. RAUSENBERG | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Delaware County Common Pleas Court, Case No. 15CRI080391 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | March 23, 2017 |
| APPEARANCES: | |

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| CAROL HAMILTON O'BRIEN<br>Prosecuting Attorney,<br>Delaware County, Ohio | TODD A. WORKMAN<br>Workman Law Firm<br>P.O. Box 687<br>Delaware, Ohio 43015 |
| By: CAROL HAMILTON O'BRIEN<br>KYLE E. ROHRER<br>140 North Sandusky St., 3rd Floor<br>Delaware, Ohio 43015 | |

*Hoffman, J.*

{¶1} Defendant-appellant Matthew D. Rausenberg appeals his convictions entered by the Delaware County Court of Common Pleas on forty-two counts, including gross sexual imposition, kidnapping and pandering sexually oriented material involving a minor.[1] Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On March 11, 2015, Detective Jason Campbell of the Delaware County Sheriff's Office received a referral from the Columbus Police Department relative to the sexual assault of a juvenile. Detective Campbell met with the juvenile on March 12, 2015.

{¶3} The sixteen year-old female juvenile (Jane Doe 1) stated she had been sexually assaulted by her teacher while a student at Olentangy Arrowhead Elementary School in Delaware County, Ohio. Jane Doe 1 told the officers the conduct continued until 2010, as she moved through the third, fourth and fifth grades in the same school building. On at least one occasion, the teacher used a video camera to record the encounter. In March of 2015, Jane Doe 1 disclosed the abuse to a Young Life counselor, a mandatory reporter, who then contacted law enforcement.

{¶4} At all times relevant, Appellant was a teacher at Olentangy Arrowhead Elementary School, where he taught for thirteen years, all but the last year as a second grade teacher. Jane Doe 1 alleged, while she was a student at Olentangy Arrowhead, Appellant would pull her into his classroom when no one else was present. He would ask her to sit on his lap, and read children's books. While reading, Appellant would rub her

---

[1] Appellant was also convicted of school zone specifications attendant to the charges.

body. He would unzip his pants and his penis would be exposed. Jane Doe 1 could feel Appellant's penis when she sat on his lap on her back. Appellant caused Jane Doe 1 to feel his penis with her hands, and lifted up her shirt, exposing and fondling her breasts. Appellant would place his hands down her pants and rub/feel her vagina, skin to skin. Jane Doe 1 maintains she attempted to push his hands away or close her legs tight, but Appellant continued. Jane Doe 1 stated the incidents would cease when the classes in the building would change. The incidents began in 2006, while she was in second grade, and continued through fifth grade in 2010. Appellant utilized a video camera to record the encounter on at least one occasion.

{¶5} Jane Doe 1 related an incident to investigating officers wherein, while she was in fifth grade, she took the camera utilized by Appellant from his classroom. She wrote him a note stating she "knew what he was doing is wrong," and she would report him to the police, if his behavior continued. Jane Doe 1 stated, after viewing the recordings on the camera, she recognized other juveniles who were current students at Olentangy Arrowhead Elementary.[2] Jane Doe 1 told the officers Appellant continued to teach at Arrowhead Elementary.

{¶6} On March 16, 2015, Detective Campbell presented a search warrant affidavit to a judge of the Delaware Municipal Court. Olentangy Arrowhead Elementary School, Appellant's place of employment, was the premises indicated in the warrant, specifically Appellant's classroom in the building. The search warrant affidavit averred Jane Doe 1 recognized other girls whom she recognized as attending the school, whom

---

[2] Appellant retrieved the camera by visiting Jane Doe 1's sister at her school, and proceeding to Jane Doe 1's residence.

she recognized from seeing their faces on the recordings of Appellant sexually abusing the juveniles.

{¶7}   Detective Jason Campbell averred in the search warrant affidavit,

Based on my knowledge, experience, and training in child sexual exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography,…

Based upon all of the foregoing, affiant believes and has probable cause to believe that the offenses described above, to wit: Rape, section 2907.02 of the Ohio Revised Code; Pandering Sexually Oriented Material Involving a Minor, section 2907.322 of the Ohio Revised Code; and Illegal Use of Minor in Nudity-Oriented Material or Performance, section 2907.323 of the Ohio Revised Code; Specifically, camera, camcorders, video recording devices, thumb drives, computers, laptops, and *any other media or storage device which can hold, contain, capture and/or share media files*; and any other evidence of said crimes may be located at 2385 Hollenback Road, Lewis Center, Delaware County, Ohio 43035, identified as Olentangy Arrowhead Elementary School.

(Emphasis added.)

{¶8}   The judge of the Delaware Municipal Court granted the search warrant, which was executed on March 16, 2015. Upon arrival at the school, the officers found

Appellant in his classroom, after school hours, working. The officers explained they were executing a search warrant for his classroom. The officers then inquired of Appellant whether he would "like to sit down and talk" to which Appellant consented. During the search of the classroom, one IPhone 5s was located in Appellant's classroom, a polaroid camera, and one older IPhone 4. Appellant provided the passwords for both devices, and consented to the search of the devices.[3]

{¶9} The Delaware County Grand Jury indicted Appellant, in Case No. 15CRI030112, on thirty-two counts, including gross sexual imposition, kidnapping and pandering sexually oriented material involving a minor. On August 21, 2015, the State dismissed the original indictment, reindicting Appellant on the original charges and ten additional charges encompassing four new victims, in Case No. 15CRI080391.[4]

{¶10} On November 9, 2015, the trial court conducted a hearing on Appellant's motions to suppress filed July 28, 2015, and July 30, 2015.

{¶11} Via Judgment Entry of November 12, 2015, the trial court denied Appellant's motions to suppress.

{¶12} The jury returned a verdict of guilty on all counts, except Count 42, on which the jury returned a verdict of not guilty. Appellant was also found guilty as to the school

---

[3] A more complete rendition of the facts and procedural history is set forth in our analysis and disposition of Appellant's assignments of error

[4] For purposes of the within appeal, we find a rendition of the underlying facts relative to the other four victims unnecessary for resolution of the appeal. Therefore, we have summarily included only the procedural posture relative to the indictment and reindictment herein.

zone specifications.[5] Via Judgment Entry on Verdicts entered January 26, 2016, the trial court entered judgment of convictions as found by the jury.

{¶13} Via Judgment Entry on Sentence entered January 28, 2016, the trial court sentenced Appellant to a total definite sentence of seventy-six years, consecutive to an indefinite sentence of thirty years to life.[6] The trial court further designated Appellant a Tier III child victim offender, subject to lifetime registration.

{¶14} Appellant appeals, assigning as error:

"I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT DENIED DEFENDANT/APPELLANT'S MOTION TO DISMISS THE INDICTMENT AS THE STATE VIOLATED DEFENDANT/APPELLANT'S STATUTORY AND CONSTITUTIONAL RIGHTS TO A TIMELY TRIAL.

"II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT DENIED DEFENDANT/APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF HIS FIFTH AMENDMENT RIGHTS.

"III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT GRANTED A SEARCH WARRANT UPON IMPROPER AND STALE INFORMATION.

---

[5] The sexual motivation specifications on Counts 38, 40 and 42 were dismissed prior to trial.

[6] Appellant has not assigned as error the sentence imposed by the trial court herein; therefore, for purposes of this appeal, we have summarily referred to the total sentence imposed.

"IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT DENIED DEFENDANT/APPELLANT'S MOTION FOR A CHANGE OF VENUE."

I.

{¶15} In the first assignment of error, Appellant maintains the trial court violated his right to a speedy trial. The trial court denied Appellant's motion to dismiss for lack of a speedy trial via Judgment Entry of November 19, 2015.

{¶16} Ohio Revised Code Section 2945.71 provides in pertinent part,

(C) A person against whom a charge of felony is pending:

\*\*\*

(2) Shall be brought to trial within two hundred seventy days after the person's arrest.

\*\*\*

(E) For purposes of computing time under divisions (A), (B), (C)(2), and (D) of this section, each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. This division does not apply for purposes of computing time under division (C)(1) of this section.

{¶17} R.C. 2945.72 sets forth the provisions tolling the speedy trial parameters. The statute reads:

The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;

(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;

(F) Any period of delay necessitated by a removal or change of venue pursuant to law;

(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;

(I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending.

**{¶18}** Appellant was initially arrested and held in custody on March 16, 2015. Therefore, the speedy trial time commenced on March 17, 2015, as the first day of arrest is not included in the speedy trial calculation. *State v. Adams,* 144 Ohio St.3d 429, 45 N.E.3d 127, 2015-Ohio-3954.

**{¶19}** On March 26, 2015, and March 30, 2015, Appellant filed a motion for a bill of particulars tolling the speedy trial time from March 26, 2015 until April 14, 2015, on which date the bill of particulars was provided to Appellant.

**{¶20}** On April 1, 2015, Appellant executed a Waiver of Time in Case No. 15CRI030112.

**{¶21}** On May 6, 2015, Appellant filed a motion for a continuance of the June 2, 2015 trial date. The request tolled the speedy-trial clock from June 2, 2015, until September 8, 2015, the date of the new trial.

**{¶22}** On July 23, 2015, the State filed a motion for continuance in order to conduct a competency evaluation. The trial court granted the motion pending the competency evaluation.

**{¶23}** On July 28, 2015, and July 30, 2015, Appellant filed motions to suppress. A hearing was set for August 11, 2015 on the motions, which Appellant requested be continued due to change of trial counsel. Appellant requested the trial court continue the hearing on the motions until his new counsel could supplement the motions to suppress. Motions to suppress were again filed on October 27, 2015, and October 30, 2015. The trial court rescheduled the hearing on the motions for November 9, 2015, and rescheduled the trial date for January 19, 2016.

**{¶24}** On August 21, 2015, the State filed an indictment, reindicting Appellant on additional charges in Case No. 15CRI080391. On August 28, 2015, the State dismissed the indictment in Case No. 15CRI030112.

**{¶25}** On September 30, 2015, Appellant filed a motion for continuance due to the retention of new trial counsel. The trial court rescheduled the trial date for January 19, 2016.

**{¶26}** On October 27, 2015, Appellant filed a motion to dismiss for violation of his right to speedy trial. The trial court denied the motion via Judgment Entry of November 9, 2015.

**{¶27}** On October 30, 2015, Appellant moved the trial court to extend the time for filing motions and memorandum

**{¶28}** On January 13, 2016, Appellant filed a motion to extend the deadline for the filing of motions in limine, which motion was sustained by the trial court. The deadline to file motions in limine was extended until January 14, 2016.

**{¶29}** On January 15, 2016, Appellant moved the trial court for a change of venue, citing pretrial publicity.  On January 19, 2016, the State filed a memorandum in opposition, stating the trial court had a duty of good faith to attempt to seat a jury before granting the motion. The trial court denied the motion following the empaneling of the jury.

**{¶30}** The matter proceeded to a jury trial on January 19, 2016.

**{¶31}** The trial court's November 9, 2015 entry denying the motion to dismiss finds the waiver of speedy trial filed in Case No. 15CRI030112 did not apply to the additional charges indicted in Case No. 15CRI 080391. We agree. When an accused waives the right to a speedy trial as to an initial charge, the waiver is not applicable to additional charges arising from the same set of circumstances brought subsequent to the execution of the waiver. *State v. Adams*, 43 Ohio St.3d 67 (1989).[7]

**{¶32}** The trial court calculated Appellant's time as follows,

---

[7] Specifically, the trial court held, "Because I am satisfied, though, that the 270-day-speedy-trial period has not run in this case even when I accord the defendant the benefit of the *Adams* rule noted in the paragraph above, I need not consider today whether the *Baker* rule- which would of course give the prosecution even more time within which to bring this case to trial- applies." The trial court references *State v. Baker*, 78 Ohio St.3d 108 (1997), syllabus, holding "In issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment." The trial court noted the state may well be able to show it did not know about at least some of the factual allegations in the case at the time of the original indictment. For purposes of the appeal herein, we assume, arguendo, the *Baker* rule is inapplicable, as did the trial court.

Several filings by the defendant in this case and in his earlier one have extended the 270-day window for his trial. ***

In light of those various events, this much time has run on the 270-day period within which the defendant must be brought to trial:

<u>10 days</u> (3/17/15 to 3/26/15), which covers the time from the defendant's arrest in the earlier case until he filed his first request for bill of particulars. *See State v. Adams*, 2015-Ohio-3954, ¶82 n. 7 (Ohio 2015) ("The day of arrest does not count when computing speedy-trial time.")

<u>Plus</u>

<u>50 days</u> ( 4/14/15 to 6/2/15), which covers the time between the date when the State responded to the defendant's requests for a bill of particulars and the trial date that the defendant asked me on May 6, 2015 to continue.

The total time elapsed on the 270-day speedy-trial clock is therefore 60 days, which- under R.C. 2945.71(E)'s each-day-in-jail-counts-as-three-days provision equates to 180 days. The 270-day period within which this case must be brought to trial has not expired.

No days have run on the speedy-trial clock since the original June 2, 2015 trial date in the earlier case because the defendant's own actions and his numerous requests for delays have pushed back that trial date. ***At every turn, the defendant has asked for delay after delay, and I have granted all of those requests.

11/9/2015 Judgment Entry Denying Defendant's 10/27/2015 Motion to Dismiss.

{¶33} We find, as did the trial court, Appellant's speedy-trial time has not expired. The trial court correctly calculated Appellant's speedy-trial time. The trial court originally scheduled a June 2, 2015 trial date. Upon motion of Appellant, the court rescheduled the trial date for September 8, 2015. Therefore, no time ran from June 2, 2015 until September 8, 2015.

{¶34} Appellant filed motions to suppress, which were scheduled for hearing on August 11, 2015. Appellant requested a continuance of the hearing due to new trial counsel becoming familiar with the case and having an opportunity to supplement the motions to suppress. Trial counsel filed supplemental motions to suppress on October 27, 2015, and October 30, 2015. As a result of the motions to suppress, the trial court rescheduled the trial date for January 19, 2016. Therefore, no time expired from the September 8, 2015 trial date until the rescheduled trial date of January 19, 2016.

{¶35} We find the trial court did not err in denying Appellant's motion to dismiss for violation of his right to speedy trial.

{¶36} The first assignment of error is overruled.

II.

{¶37} Appellant's second assignment of error challenges the trial court's denial of his motion to suppress statements made to law enforcement on March 16, 2015.

{¶38} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist.1991); *State v. Guysinger,*

86 Ohio App.3d 592 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger.*

**{¶39}** When reviewing a trial court's decision to deny a motion to suppress evidence, we are guided by the Ohio Supreme Court's rulings in *State v. Smith* (1991), 61 Ohio St.3d 284 and *State v. Fanning* (1982), 1 Ohio St.3d 19.

**{¶40}** Pursuant to these cases, it is well settled law that "[a]t a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." *Smith* at 288, citing *Fanning* at 20. We are therefore required to accept the trial court's findings of fact if they are supported by competent, credible evidence, *State v. Klein* (1991), 73 Ohio App.3d 486, 488.

**{¶41}** In *State v. Tucker,* 81 Ohio St.3d 431, 692 N.E.2d 171, 1998-Ohio-438, the Ohio Supreme Court opined,

> In the course of its opinion in *Miranda v. Arizona* (1966), 384 U.S.
> 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706, the United States

Supreme Court, in establishing the well-known "*Miranda* rules" for advising suspects of their rights, stated that "[b]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." * * *

**{¶42}** For *Miranda* purposes, the trial court must determine whether there is a formal restraint or a restraint on movement associated with formal arrest. This decision depends upon the facts of each case. *State v. Warrell* (1987), 41 Ohio App.3d 286, 287, citing *California v. Beheler* (1983), 463 U.S. 1121, 1125. In making this determination, the trial court must determine how a reasonable person in the suspect's position would have understood his position. *Id.,* citing *Berkemer v. McCarty* (1984), 468 U.S. 420, 442.

**{¶43}** Appellant asserts the trial court erred in denying his motion to suppress statements made to law enforcement on March 16, 2015, asserting he was in custody, therefore the statements were not voluntary.

**{¶44}** Upon execution of the search warrant herein, Detective Campbell entered Appellant's classroom after school hours, where Appellant was working. Campbell informed Appellant the officers were executing a search warrant, and asked Appellant if he had any cellular phones or other electronic devices with him. Appellant disclosed an IPhone 5 and a "polaroid" camera. Appellant later gave officers consent to search the phone, providing the password thereto.

**{¶45}** The officers then asked Appellant if they could talk to him in the school conference room. Specifically, the officers stated, "If it's not a problem, we could sit down

and talk a minute." Detective Campbell repeatedly told Appellant he was not under arrest, and did not anticipate his arrest that day. The officer told Appellant his cooperation was voluntary, and Appellant was not threatened or coerced.

{¶46} During the interview, Appellant was asked if he had any other electronic devices or cell phones in the class, and if he had a problem with the officers searching the items. Appellant indicated he did not have a problem with the search. During the search of Appellant's classroom, a second, older iPhone 4 device was located. The officers inquired of Appellant regarding the phone, and Appellant again provided the password for the IPhone 4. Suppression Hearing Tr. at 14-17.

{¶47} Following the interview Appellant was taken into custody, and read his Miranda rights.

{¶48} We note, upon review of the audio recording introduced at the suppression hearing [State's Exhibit Suppression Hearing 1], Appellant did not try to stop the interview or ask for an attorney. Appellant was repeatedly told he was not under arrest. The interview was voluntary, and not coerced by law enforcement. Accordingly, Appellant was not in custody during the interview. Appellant willingly walked with the officers to the conference room. His ability to leave the room was not impeded, despite the officer's statement they would need to follow him if he left the conference room due to the execution of the search warrant, for fear of tampering with evidence or destruction of evidence. Appellant did not ask for an attorney, nor did he ask to cease the interview.

{¶49} We find a reasonable person, under the circumstances presented, would have felt free to terminate the interview and leave the conference room.

{¶50} The trial court did not err in denying Appellant's motion to suppress statements made to law enforcement during the interview on March 16, 2015

III.

{¶51} In the third assignment of error, Appellant argues the trial court erred in denying his motion to suppress the affidavit and search warrant executed on March 16, 2015. Appellant maintains the search warrant affidavit presented by Detective Campbell contained stale information and failed to explain Detective Campbell's qualifications.

{¶52} Detective Campbell averred in the affidavit he was a Detective with the Delaware County Sheriff's Office. He described in detail the information obtained from Jane Doe 1, her sister and her mother. He noted he possessed "experience and training" in "child sexual exploitation and child pornography investigations."

{¶53} In *State v. Haynes*, 25 Ohio St.2d 264 (1971), the Ohio Supreme Court held,

Those cases, taken together, require that the issuing magistrate be given sufficient information to allow him, as a neutral and detached officer, to make an independent judgment that probable cause exists to warrant the belief that the contraband is on the premises sought to be searched. Where the affidavit upon which the warrant is to be issued is based upon hearsay information obtained from an informant, such affidavit, if that is all that is before the magistrate, must show two things: First, the underlying circumstances which will enable the magistrate to independently judge the validity of the informant's conclusion that the [evidence would be] on the premises; second, sufficient information to show that the informant was

credible or his information was reliable. Ventresca, supra, [citation omitted] points out, however, that in determining such matters the courts should not be hypertechnical, but should use common sense.

       ***

In determining the reliability of the information, the magistrate must consider the facts presented to him, and if such facts would cause a reasonable man to believe there are grounds for believing that the [evidence] is on the premises sought to be searched, he is justified in believing in the reliability of the informant. It must be remembered that the probable cause necessary to justify the issuance or a search warrant requires less facts than are necessary for conviction, and the amount and method of proof is less strict. *Jones v. United States* (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.

In this type of case, the court is concerned with probable cause, not certainty, and this extends to the determination of the reliability of the informer. It is not necessary to show incontrovertible proof that the informer is reliable, but only that such information would cause a neutral and detached officer to believe there is sufficient substance to the statement to justify a search of the premises.

The Ohio Supreme Court held in *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989).

**{¶54}** The totality-of-the-circumstances test of *Illinois v. Gates, supra,* is concisely set forth in that decision at 238–239, 103 S.Ct. at 2332:

" * * * The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed. *Jones v. United States,* 362 U.S. at 271[, 80 S.Ct. 725, 736, 4 L.Ed.2d 697]. * * * "

The *Gates* decision provides considerable elaboration as to the "fair probability" standard applicable to the magistrate's probable cause determination. We find the following passage particularly instructive:

" * * * '[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation * * *. It imports a seizure made under circumstances which warrant suspicion' [quoting from *Locke v. United States* (1813), 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364]. More recently, we said that 'the *quanta* * * * of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar,* 338 U.S., at 173, 69 S.Ct. at 1309. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. * * * [I]t is clear that '*only the probability, and not a prima facie showing, of criminal*

*activity is the standard of probable cause.' Spinelli,* 393 U.S., at 419[, 89 S.Ct. at 590–591]. See Model Code of Pre–Arraignment Procedure § 210.1(7) (Prop. Off. Draft 1972); 1 W. LaFave, Search and Seizure § 3.2(e) (1978)." (Emphasis added.) *Illinois v. Gates, supra,* at 235, 103 S.Ct. at 2330.

It is also important to note that the totality-of-the-circumstances analysis of *Gates* not only addresses the original probable cause determination of the magistrate but carefully limits the role of a reviewing court as well to that of simply " * * * ensur[ing] that the magistrate had a 'substantial basis for * * * concluding' that probable cause existed. * * *" *Id.* at 238–239, 103 S.Ct. at 2332. In this regard, we find the following language especially pertinent to the case before us:

"* * * [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' *Spinelli, supra,* at 419[, 89 S.Ct. at 591]. * * *" *Gates, supra,* at 236, 103 S.Ct. at 2331.

George, 45 Ohio St.3d 325.

**{¶55}** A reasonable judge would not have doubted Detective Campbell's credibility. A search warrant affidavit should be judged "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Brown*, 801 F.3d 679, 687 (6th Cir. 2015).

**{¶56}** We find the search warrant affidavit presented herein established the requisite "fair probability" evidence of a crime would be found in the defendant's classroom. Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof, but more than suspicion, and is said to exist when there is fair probability, given the totality of the circumstances, contraband or evidence of a crime will be found in a particular place. *United States v. Howard*, 621 F.3d 433, 453 (6th Cir. 2010.)

**{¶57}** The affidavit explained the allegations made by Jane Doe 1. Additionally, Detective Campbell averred his experience and training taught him persons who collect child pornography "typically retain" recordings and other forms of pornography for many years and in places "close by." He also stated the recordings can be recovered from some electronic devices months or years after the information is deleted. In total, we find the facts establish a fair probability evidence of a crime would be found in Appellant's classroom.

**{¶58}** The search warrant gave the officers authority to search for computers and "any other evidence" related to the commission of the offenses. The warrant included "storage devices" as well as "communication devices."

**{¶59}** In addition, during his interview at the school with Detective Campbell, Appellant consented to the search of his current and old cell phone. The search warrant provided for search of cameras, camcorders, video recording devices, thumb drives, computers, laptops, and any other media or storage device which can hold, contain, capture and/or share media files; and any other evidence of said crimes may be located at 2385 Hollenback Road, Lewis Center, Delaware County, Ohio 43035.

{¶60} We find the trial court did not error in denying Appellant's motion to suppress the search warrant herein. The third assignment of error is overruled.

IV.

{¶61} Appellant's fourth assignment of error maintains the trial court erred in denying his motion for change of venue, which motion was filed prior to trial. We note, Appellant did not renew his motion for change of venue following the empaneling of the jury herein.

{¶62} Prior to trial and the commencement of voir dire, the trial court stated on the record,

> We also have in the file a Motion for Change of Venue that was filed by the Defendant a few days ago. The prosecutor has responded to that this morning and I trust we're probably all in agreement that until we begin the voir dire process this morning, none of us knows the extent to which pretrial publicity may make it difficult to seat a jury, so I'll certainly keep an open mind about that issue and see what we learn here over the next couple of hours from potential jurors, but certainly the Motion for Change of Venue is here in the file and I can address that during and after jury selection today.
>
> Vol I. Trial transcript, at 16-17.

{¶63} Following the empaneling of the jury, the trial court stated on the record its denial of Appellant's motion for change of venue. The trial court indicated it was satisfied

a fair and impartial jury was empaneled. Appellant did not then renew his motion for change of venue or object to the trial court's ruling.

{¶64} During voir dire, the trial court inquired of the potential juror panel whether anyone had read or heard anything about the case. Seven of the potential jurors who were eventually empaneled indicated they had heard or read something about the case previously. However, each, in turn, indicated they did not harbor bias, and would be able to serve as a fair and impartial juror. The remaining eight potential jurors who were seated did not indicate they had heard or read anything about the case prior to service. However, of the eight, four testified on voir dire they would be able to serve as fair and impartial jurors. The remaining three did not indicate a bias when questioned during voir dire, and remained silent when asked whether they had knowledge of any pretrial publicity.

{¶65} The trial court dismissed two potential jurors for cause due to bias. The State exercised two peremptory challenges of potential jurors, and Appellant exercised one. The trial court then found a fair and impartial jury had been empaneled.

{¶66} We do not find the trial court erred in denying Appellant's motion for change of venue as Appellant has not demonstrated error in the trial court's determination a fair and impartial jury was empaneled, nor has Appellant demonstrated prejudice with regard to the trial court's determination.

{¶67} The fourth assignment of error is overruled.

**{¶68}** The judgment entered by the Delaware County Court of Common Pleas is affirmed.

By: Hoffman, J.

Gwin, P.J. and

Baldwin, J. concur