[Cite as *State v. Freeders*, 2017-Ohio-9278.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J.<br>Hon. Earle E. Wise, J. |
| -vs- | |
| | Case No. 2017 CA 00041 |
| SHAD FREEDERS | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:        Criminal Appeal from the Court of Common
                                Pleas, Case No.  2016 CR 01783

JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         December 26, 2017

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN D. FERRERO                       AARON KOVALCHIK
PROSECUTING ATTORNEY                  116 Cleveland Avenue, NW
RONALD MARK CALDWELL                  808 Courtyard Centre
ASSISTANT PROSECUTOR                  Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, John, P. J.*

**{¶1}** Appellant Shad Freeders appeals his conviction, in the Court of Common Pleas, Stark County, on two felony counts pertaining to the illegal manufacture of methamphetamine. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

**{¶2}** The charges leading to the conviction at issue in this matter grew out of a September 12, 2016 traffic stop of Appellant Freeders' motor vehicle and a subsequent search of a residence at 450 McNally Court by Alliance police officers. At that time, the senior investigating officer on the case, Captain James Hilles, was responsible for monitoring, via the "NPLEX" system, a watch list of persons making suspicious retail purchases of the precursor chemicals to make methamphetamine, including pseudoephedrine. As further discussed *infra*, appellant was on this watch list.

**{¶3}** On the evening in question, the Alliance Police Department received an alert from the pharmacy in the West State Street Walmart that appellant had just purchased pseudoephedrine. Captain Hilles and Detective Bob Rajcan thereupon proceeded to said location in separate vehicles to investigate. The two officers were familiar with appellant and his vehicle, and Captain Hilles soon observed appellant's car on the road.

**{¶4}** Captain Hilles thereupon radioed Detective Rajcan for backup, and then followed appellant as he drove up to an AutoZone automotive parts store on East State Street. After Detective Rajcan arrived, the officers watched appellant exit the store "with a small bag consistent with a bag that would have lithium batteries." Hilles Testimony, Suppression Transcript ("S.Tr.") at 16.

{¶5} The officers proceeded to follow appellant's car after he departed the store. After reaching Summit Street, a traffic stop was effectuated. Captain Hilles ordered appellant out of his car at gunpoint, based on concerns that appellant might have an active mobile "meth lab" in the vehicle. The officers observed lithium batteries in plain sight on one of the car seats. Appellant was then placed under arrest for possessing chemicals to manufacture methamphetamine. Appellant was given his *Miranda* rights, and when he was asked for consent to a search of the residence at 450 McNally Court, he declined to give consent and denied said residence was his. S.Tr. at 23. Captain Hilles and other officers then proceeded to 450 McNally Court. They searched the trash, observing additional indicators of precursor chemicals, and then entered the house pursuant to R.C. 2933.33(A), *infra*. They later obtained and executed a search warrant for the house.

{¶6} On October 31, 2016, Appellant Freeders was indicted on one count of illegal manufacture of drugs, R.C. 2925.04(A) (a felony of the first degree), and the illegal assembly or possession of chemicals for the manufacture of drugs, R.C. 2925.041(A) (a felony of the third degree). Appellant entered pleas of not guilty to both of the aforesaid charges.

{¶7} On November 23, 2016, appellant filed a motion to suppress, arguing that the traffic stop and warrantless entry/search of the house were illegal, and thus the evidence of a meth lab operation at the residence should have been suppressed.

{¶8} On December 20, 2016, the trial court conducted an evidentiary hearing on appellant's suppression motion. The sole witness was Captain Hilles.

{¶9} On January 23, 2017, the trial court issued a nine-page judgment entry overruling the motion to suppress.

{¶10} On February 1, 2017, appellant appeared before the trial court and entered pleas of "no contest" to both of the aforesaid counts. Via a judgment entry issued on February 6, 2017, the trial court sentenced appellant to a prison term of four years for the offense of illegal manufacture of drugs, and a concurrent term of thirty-six months for the offense of illegal assembly or possession of chemicals for the manufacture of drugs.

{¶11} On March 3, 2017, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

{¶12} "I. APPELLANT'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 14 OF THE OHIO CONSTITUION [SIC] WERE VIOALTED [SIC] WHEN THE TRIAL COURT OVERRULED THE MOTION TO SUPPRESS."

I.

{¶13} In his sole Assignment of Error, appellant essentially contends the trial court erred and violated his constitutional rights by denying his motion to suppress. We disagree.

{¶14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine,

without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *See State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. The United States Supreme Court has held that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. *See Ornelas v. United States* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

{¶15} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

{¶16} "Under *Terry,* police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot ***." *State v. Swift*, 2nd Dist. Montgomery No. 27036, 2016–Ohio–8191, ¶ 10. In other words, the Fourth Amendment does not require a police officer to "simply shrug his [or her] shoulders and allow a crime to occur ***." *State v. Klein*, 73 Ohio App.3d 486, 489, 597 N.E.2d 1141 (4th Dist.1991).

{¶17} "* * * [I]f an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion

considering all the circumstances, then the stop is constitutionally valid." *State v. Mays,* 119 Ohio St.3d 406, 894 N.E.2d 1204, 2008–Ohio–4539, ¶ 8. However, an officer's reasonable articulable suspicion does not require proof beyond a reasonable doubt that the defendant's conduct has satisfied the elements of the offense. *State v. Willis,* 5th Dist. Licking No. 14 CA 103, 2015–Ohio–3739, ¶ 25, citing *Westlake v. Kaplysh,* 118 Ohio App. 3d 18, 20, 691 N.E.2d 1074 (8th Dist.1997).

*Initial Traffic Stop*

**{¶18}** Appellant first challenges the legality of the officers' stop of his vehicle a few minutes after he left the AutoZone store.

**{¶19}** In the case *sub judice*, Captain Hilles testified that the fundamental reason for the traffic stop was because the officers believed appellant had purchased the precursors for methamphetamine and that he had previously sold methamphetamine. S.Tr. at 17-18.[1] Appellant was on the local precursor watch list at that time based on his twenty reported purchases of pseudoephedrine over a twelve-month period. These purchases, involving seven different pharmacies, were for 2.4 gram boxes of pseudoephedrine, which are commonly used to make meth in illegal labs. S.Tr. at 10-11. Captain Hilles equated this to approximately one purchase every two weeks, which, according to his testimony, is the maximum amount one can buy without going into an "exceedance level." S.Tr. at 11.

---

[1] Upon cross-examination, Captain Hilles also testified that he observed appellant speeding before appellant stopped at AutoZone, and that a traffic citation was issued after appellant's arrest. S.Tr. at 27. However, it was conceded that the traffic citation was not signed by Captain Hilles. S.Tr. at 28. Hilles was also under the impression prior to the stop that appellant was under suspension, but appellant apparently had a valid driver's license at the time. However, these bases were not relied upon by the trial court in its decision. *See* Judgment Entry, January 23, 2017, at f.n. 1.

{¶20} Furthermore, the officers were aware that a confidential informant ("CI") working with the Alliance Police Department had purchased suspected methamphetamine from appellant on September 6, 2016, just six days earlier, although we note Captain Hilles testified on cross-examination that sometime *after* the events presently at issue, the crime lab results came back that the substance purchased by the CI was not methamphetamine. S.Tr. at 30. In addition to the above pseudoephedrine purchases, appellant on the day in question was seen exiting an AutoZone store, well down the road from the location of his most recent purchase at WalMart, carrying a small bag consistent with the purchase of lithium batteries. Captain Hilles noted that lithium batteries are "absolutely" necessary for methamphetamine production. S.Tr. at 16. Hilles also testified that persons buying precursor materials often visit several stores to avoid detection by retail personnel, and common stops are big-box, dollar, or auto parts stores. We recognize that the batteries in appellant's possession in this instance were not visible to the officers until after the traffic stop. However, in light of appellant's monitored NPLEX history of activity related to purchasing precursor chemicals, his familiarity to the officers via a suspected CI purchase, and his activity on the day in question, we find Captain Hilles adequately iterated a reasonable articulable suspicion of criminal activity afoot to justify the traffic stop of September 12, 2016.

{¶21} Accordingly, upon review, we hold the trial court did not err in denying appellant's suppression motion in regard to the issue of the traffic stop.

*Initial Search of the 450 McNally Court Residence*

{¶22} Appellant secondly challenges the legality of the officers' warrantless entry into the residence at 450 McNally Court.

**{¶23}** As an initial matter, we *sua sponte* note that under the general rule of Crim.R. 47, a motion to suppress "shall state with particularity the grounds upon which it is made." The State's burden of proof in a motion to suppress hearing is limited to those contentions that are asserted with sufficient particularity to place the prosecutor and court on notice of the issues to be decided. *Johnstown v. Jugan,* 5th Dist. Licking No. 95CA90, 1996 WL 243805. "In general, the State is not expected to anticipate specific legal and factual grounds upon which a defendant relies in a motion to suppress." *State v. Fowler*, 5th Dist. Tuscarawas No. 2016AP040024, 2016-Ohio-5940, ¶ 22. Failure of the defendant to adequately raise the basis of his or her challenge constitutes a waiver of that issue on appeal. *See City of Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218–219, 524 N.E.2d 889.

**{¶24}** Appellant's motion to suppress in the trial court record consists of an introduction followed by a two-page memorandum which concisely sets forth various search and seizure case law citations, ending with the following:

> In the instant case a traffic stop was initiated and the Defendant was unreasonably detained. As a result of the illegal traffic stop[,] a warrantless search of the Defendant's residence was conducted. After the illegal warrantless search[,] evidence and statements were obtained. WHEREFORE, Defendant requests this Honorable Court to suppress any and all statements and physical evidence obtained subsequent to the unlawful search and seizure.

**{¶25}** Motion to Suppress, November 23, 2016, at 3.

**{¶26}** While one would be hard-pressed to conclude the foregoing generously provides "specific factual grounds" (*Fowler, supra*) in support of suppressing the results of the search of the residence, in the interest of justice we will proceed with our analysis.

**{¶27}** R.C. 2933.33(A) states that "[i]f a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamine causing injury to the public constitutes exigent circumstances and reasonable grounds to believe that there is an immediate need to protect the lives, or property, of the officer and other individuals *in the vicinity* of the illegal manufacture." (Emphasis added).

**{¶28}** We have defined "probable cause" as "reasonable grounds for belief, supported by less than prima facie proof, but more than suspicion, and [which] is said to exist when there is fair probability, given the totality of the circumstances, contraband or evidence of a crime will be found in a particular place." *State v. Rausenberg*, 5th Dist. Delaware No. 16CAA020007, 2017-Ohio-1078, ¶ 56, citing *United States v. Howard*, 621 F.3d 433, 453 (6th Cir. 2010).

**{¶29}** The Ninth District Court of Appeals has aptly noted as follows:

The combustible nature of methamphetamine laboratories poses a grave danger to occupants of the dwelling, neighbors, law enforcement and the community at large. The existence of an active methamphetamine laboratory is, as a matter of law, an emergency which threatens life and limb that supports an objectively reasonable belief that immediate action is necessary to protect life or property.

**{¶30}** *State v. Timofeev*, 9th Dist. Summit No. 24222, 2009-Ohio-3007, ¶ 26 (additional citations omitted).

**{¶31}** In its judgment entry overruling appellant's suppression motion, the trial court included the following pertinent determinations:

In this case, the Court finds that Captain Hilles had a reasonable belief that a methamphetamine laboratory was being operated at the residence. The Court finds that such reasonable belief developed after the defendant was observed to assemble the precursors for the manufacturing of methamphetamine as set forth above. Moreover, the defendant, with such precursors, was headed in the direction of the residence, where the officers believed he had been making methamphetamine based upon prior controlled purchases from the defendant. Additionally, upon approaching the residence, the officers observed empty containers of the precursors for the manufacturing of methamphetamine in plain view in the trash cans. Further, as indicated by the defendant, no one was living at the residence at the time of [the] stop, which indicated to Captain Hilles that the lab was unattended and, therefore, very volatile. Viewing the totality of the circumstances, the Court finds, pursuant to R.C. §2933.33(A), as a matter of law, an emergency existed permitting the officers to enter the residence without a warrant being issued and that the warrantless entry into the residence was permitted pursuant to same.

**{¶32}** Judgment Entry, January 23, 2017, at 8-9.

**{¶33}** Ohio case law has recognized that a police officer's training and experience in the area of methamphetamine production can be used to support a finding that the officer believed the methamphetamine activity in a residence was dangerous to those in close proximity. *See State v. Runyon*, 2nd Dist. Greene No. 2015-CA-63, 2016-Ohio-5730, ¶ 29, citing *State v. Parson,* 2d Dist. Montgomery No. 23398, 2010–Ohio–989, ¶ 15.

**{¶34}** In addition to the foregoing facts spelled out by the trial court, we note Captain Hilles testified he has had specialized training in the areas of manufacturing of methamphetamine, methamphetamine labs, methamphetamine trafficking, and the effects of the drug on the human body. In addition, he is also certified to recognize the chemicals involved, how labs are set up, and how to safely dismantle such labs. *See Runyon*, *supra.* Although he did not mention the existence of a chemical odor at the scene in this instance, he testified that an unwatched meth lab, if in the reaction phase, can be akin to a "fire bomb," and that it can otherwise leak acidic gasses into the immediate vicinity. S.Tr. at 25. He noted that in the McNally Court neighborhood, children "play on [the] street because it's not really a throughfare [*sic*] too much for traffic." S.Tr. at 26.

**{¶35}** We note the trial court relied in part upon *State v. Armbruster*, 9th Dist. Summit No. 26645, 2013-Ohio-3119, ¶ 8, for the proposition that probable cause is not required for a warrantless entry if officers have a reasonable belief that a methamphetamine laboratory is being operated at a particular location. *See* Judgment Entry at 8. While our reading of R.C. 2933.33(A) does not lead us to adopt *in totidem verbis* this portion of *Armbruster*, we nonetheless conclude that probable cause did exist

alongside the exigent circumstances of the case *sub judice*, thus justifying the warrantless entry.

{¶36} Therefore, upon review, we hold the trial court did not err in denying appellant's suppression motion in regard to the initial search of the residence.[2]

{¶37} Appellant's sole Assignment of Error is overruled.

{¶38} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, John, P. J.

Baldwin, J., and

Wise, Earle, J., concur.

JWW/d  1212

---

[2]  In so holding, we find it unnecessary to reach the ancillary issue of whether appellant, having told the officers that he did not live at the residence and was merely watching it for the owners, had legal standing to challenge the search.